UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LISA TERRACIANO,<br><br>Defendant. | No.  2:17-cr-00187-KJM-2<br><br>ORDER GRANTING COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c) |

        Defendant Lisa Terraciano moves for compassionate release from incarceration under 18 U.S.C. § 3582(c).  She argues an infection with the novel coronavirus, COVID-19, that has reached the prison would pose an extraordinary risk to her health because of her body mass index (BMI), previous diagnosis of hepatitis C, hypertension and history of smoking.  *See* Mot., ECF No. 86; Suppl. Br., ECF No. 96; Reply, ECF No. 100.  The government opposes Terraciano's motion principally on the basis that she has completed only about 20 percent of her total sentence of incarceration for a serious bribery offense; it does not contest that her health conditions place her at greater risk of developing severe COVID-19 or that inmates and staff in the prison where Terraciano lives have contracted COVID-19.  *See generally* Opp'n, ECF No. 98.  Terraciano's short time served does indeed weigh against her motion, but it does not outweigh the

many other considerations that weigh in her favor.  As explained in more detail below, the motion is granted.

**I.      BACKGROUND**

Terraciano was a technician at the California DMV.  *See* Plea Agreement Ex. A, ECF No. 38.  For several years, she accepted bribes in return for excusing testing requirements for commercial driving permits and licenses.  *See id.*  After the scheme was uncovered, she was charged with and pleaded guilty to a single count of conspiracy to commit bribery, identity fraud and unauthorized access to a computer.  *See* Change of Plea Hr'g Minutes, ECF No. 31; Plea Agreement at 2, ECF No. 38.  Terraciano was sentenced to 40 months' imprisonment and a 24-month term of supervised release, which was below the Guidelines range of 57–60 months.  *See* Sentencing Hr'g Minutes, ECF No. 79; Presentence Report ¶ 68, ECF No. 73.

A few months after she began serving her 40-month sentence, Terraciano became concerned that if she contracted COVID-19, she may experience an unusually severe case as a result of her health conditions.  *See* Mot. at 1–2, ECF No. 86.  She has been diagnosed with hepatitis C, she has hypertension, her BMI is at the borderline between values that doctors consider "overweight" and "obese," and she has a history of smoking.  *See* Presentence Report ¶ 55, ECF No. 73; Suppl. Br. Ex. B.[1]  Dr. Catherine Pearson, M.D., who practices internal medicine and is a fellow of infectious diseases at the University of California, San Francisco, reviewed Terraciano's medical record.  Suppl. Br. Ex. C, ECF No. 96-2.  Dr. Pearson concluded that Terraciano's hypertension, BMI and history of smoking do increase her risk of hospitalization, treatment in an intensive care unit, invasive life support and even death.  *Id.* at 2.  Dr. Pearson has not offered an opinion about Terraciano's hepatitis C diagnosis.

Terraciano is currently assigned to the Federal Correctional Institution in Victorville, California.  Opp'n Ex. 1, ECF No. 98-1.  Her projected release date is in December

---

[1] The court grants the parties' requests to file this exhibit and other health records under seal to protect her private medical information.  *See Chester v. King*, No. 1:16-cv-01257, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

2022, so she has completed about 20 percent of her sentence of incarceration. *See id.* According to her counsel,[2] she lives in a large cell with more than 90 other inmates and must also work outside that dormitory. Suppl. Br. at 13, ECF No. 96. She and her 90-plus cellmates share the same toilets and showers and line up together for food and medications; it is not possible to practice social distancing in these conditions. *Id.*; *see also* Mot. at 1, ECF No. 86.

Terraciano moves for compassionate release under 18 U.S.C. § 3582(c). *See* Mot., ECF No. 86; Suppl. Br., ECF No. 096; Reply, ECF No. 100. The government opposes her motion. *See generally* Opp'n, ECF No. 98.

**II.    LEGAL STANDARD**

A sentencing court has authority to modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce her term of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i).

Many years ago—before the First Step Act and before defendants could move to reduce their sentences under § 3582—the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" under § 3582. *See* U.S.S.G. § 1B1.13. The same Guidelines section also "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 16- 00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

---

[2] Terraciano did not submit a sworn declaration attesting to these facts; they were reported by counsel in her supplemental brief. Counsel's reports, however, are subject to the obligations of Rule 11, and the government does not dispute them.

3

Since the First Step Act was passed, district courts have disagreed about whether the Sentencing Commission's statement is binding. Some courts have determined that the statement "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019), because it does not account for a defendant's ability to move for compassionate release, *see United States v. Allen*, No. 17-0229, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *see also United States v. Willingham*, No. 10-113, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)). A strong contingent of decisions issued by district courts within the Ninth Circuit has concluded the Guidelines are no longer limiting and the sentencing court has complete discretion to decide what counts as "extraordinary and compelling" reasons. *See, e.g.*, *United States v. Rodriguez*, No. 17-00021, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release." (citation and quotation marks omitted)); *United States v. Chan*, No. 96-00094, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 98- 00749, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering policy statement as guidance).

But many courts in this circuit still turn to section 1B1.13 for "guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 07- 00294, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020), *appeal filed*, No. 20-30083 (9th Cir. Apr. 8, 2020) (quoting *United States v. Gonzalez*, No. 18-0232, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020)); *see also Riley v. United States*, No. 19-1522, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of

4

judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-35334 (April 13, 2020).

This court has looked to the Sentencing Commission's policy statement as guidance in several previous orders and will do the same here. *See, e.g.*, *United States v. Schweder*, No. 11-00449, 2020 WL 5257598, at *3 (E.D. Cal. Sept. 3, 2020); the court need not decide whether that statement is binding.

**III.   DISCUSSION**

The parties do not dispute that Terraciano has exhausted her administrative remedies as required by § 3582(c). *See* Opp'n at 4, ECF No. 98. The court thus considers (A) whether Terraciano has demonstrated that her motion is supported by extraordinary and compelling reasons and (B) whether applicable sentencing factors of § 3553(a) support her motion.

**A.   Extraordinary and Compelling Reasons**

People living in congregate living situations are vulnerable to coronavirus because the virus is highly contagious in closed environments. *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, U.S. Centers for Disease Control and Prevention, July 22, 2020).[3] The combination of custody, housing, education, recreation, healthcare, food service, and workplace environments within one physical setting makes for unique challenges in controlling the spread of coronavirus. *See id.* The Bureau of Prisons has "taken steps to try to protect inmates' and employees' health" and keep COVID-19 from its facilities, but it has "not been immune from the COVID-19 pandemic." Opp'n at 4–5, ECF No. 98. Thousands of inmates and staff have tested positive for COVID-19, and although thousands have recovered, more than 100 have died. *Id.* at 5.

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (visited Oct. 1, 2020).

5

In the Victorville facility where Terraciano is housed, 17 inmates have tested positive for COVID-19, and these numbers appear to be increasing in recent days.[4]  This court has also expressed concerns "about the government's methods for tabulating the numbers of inmates infected versus those recovered"; reported figures seem to understate the extent of coronavirus infections.  *Schweder*, 2020 WL 5257598 at *5.  As noted above, Terraciano has told her counsel that she and others in the prison cannot follow social distancing guidelines because they live and eat in close quarters.  *See* Suppl. Br. at 13, ECF No. 96.  Many other district courts have found that conditions in FCI Victorville present high risks of coronavirus infection to inmates, even when no active cases have been detected.  *See, e.g.*, *United States v. Rodriguez*, __ F. Supp. 3d __, No. 17-4477, 2020 WL 4592833, at *3 (S.D. Cal. Aug. 5, 2020); *United States v. Heffington*, __ F. Supp. 3d __, No. 93-05021, 2020 WL 4476485, at *7 (E.D. Cal. Aug. 4, 2020); *United States v. Millage*, __ F. Supp. 3d __, No. 13-234, 2020 WL 2857165, at *5 (D. Or. June 2, 2020), *appeal dismissed*, 810 F. App'x 572 (9th Cir. 2020).  The high risk of infection in FCI Victorville weighs in favor of Terraciano's motion.

Terraciano's health conditions increase the risk she would suffer a more severe case of COVID-19 if she contracted the virus.  According to Dr. Pearson's uncontroverted opinion, hypertension, a history of smoking, and BMI at or near the level described as "obese" increase Terraciano's risk of hospitalization and death.  Suppl. Br. Ex. C, ECF No. 96-2.  Many district courts have granted motions for compassionate release to inmates with these same comorbidities, including in decisions in this District:

- Hypertension, *see, e.g.*, *United States v. Richardson*, No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("Defendant's hypertension alone places him at significant risk of complications."); *United States v. Sanders*, No. 19-20288, 2020 U.S. Dist. LEXIS 67595, at *10 (E.D. Mich. Apr. 17, 2020) ("Several courts . . . have identified hypertension as an underlying medical condition that

---

[4] *Compare* Bureau of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/ (visited Oct. 1, 2020) (reporting 21 confirmed cases among inmates) *with* Opp'n at 5 (reporting 10 confirmed cases among inmates).

renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic.");

- Obesity, *see, e.g.*, *Richardson*, 2020 U.S. Dist. LEXIS 108043 at *8 (finding that "obesity alone" places a defendant "at higher risk of COVID-19 complications); *United States v. Levario*, No. 12-00399, 2020 U.S. Dist. LEXIS 105211, at *6 (E.D. Cal. June 15, 2020) (same);

- A history of smoking, *see, e.g.*, *United States v. Galaz*, No. 15-02559, 2020 WL 4569125, at *4 (S.D. Cal. Aug. 7, 2020) (collecting authority and research about risks of severe COVID-19 among those with history of smoking); and

- Hepatitis C, *see, e.g.*, *United States v. Ludwig*, No. 14-00043, 2020 U.S. Dist. LEXIS 140934, at *10 (E.D. Cal. Aug. 5, 2020) ("[D]istrict courts have found hepatitis B and C constitute medical conditions that increase the risk of severe illness from coronavirus warranting release, without necessarily clarifying whether the hepatitis is active, in remission or resolved.").

The high risk of infection and Terraciano's health conditions are extraordinary and compelling reasons to grant her request under § 3582(c).

**B.     Section 3553(a) Sentencing Factors**

The applicable sentencing factors also weigh in Terraciano's favor. Although her conviction for bribery represents a serious offense, because California roads were likely more dangerous as a result of her actions, her involvement in the scheme appeared to be "aberrant behavior" and to "stem from financial desperation rather than greed." Presentence Report at 19, ECF No. 73. She had no other criminal history, *id.*, and she has no record of discipline since entering prison, *see* Suppl. Br. Ex. A at 1, ECF No. 96-1. A repeat offense or similar misconduct is thus unlikely.

Terraciano has also proposed a release plan that will allow the government to supervise and monitor her that will reduce the risk she again finds herself in the sort of dire financial straits that appear to have motivated her offense and that will reduce the risk of infection to her and to others. She will live with her sister in a three-bedroom condominium where she can

1  follow quarantine requirements, and her former employer has offered her a job.  *See* Suppl. Br.
2  Ex. D.  U.S. Probation and Pretrial Services for the Central District of California has approved
3  her release plan.  She will be subject to the drug testing, employment requirement, and other
4  conditions of her release, as previously ordered.  *See* Judgment & Commitment, ECF No. 81.
5  The record therefore does not permit the conclusion Terraciano would likely pose a danger to her
6  community if her motion is granted, which weighs in favor of her motion.

7  One factor, as noted, weighs against her: if this motion is granted, Terraciano's
8  sentence of incarceration will effectively be reduced by about 80 percent, i.e., from 40 to about 8
9  months.  Although an 8-month sentence of incarceration might not serve the deterrence and
10  restitution goals of § 3553 in a world unspoiled by a viral pandemic, today that world remains
11  merely hypothetical.  Terraciano was sentenced to 40 months' incarceration, not to an abnormally
12  high risk of contracting a disease that for her may prove deadly.  "Courts have been willing to
13  grant release in spite of a short amount of time served where a defendant's health conditions rose
14  to the level of an 'extraordinary and compelling' reason."  *Galaz*, 2020 WL 4569125, at *6
15  (collecting authority and granting motion for compassionate release to inmate who had served
16  only 14 months of her 48-month sentence); *see also, e.g.*, *United States v. Fowler*, 445 F. Supp.
17  3d 452, 452 (N.D. Cal. 2020) (granting release for defendant who had served 11 months of 60
18  month sentence); *United States v. Castillo*, No. 08-146, 2020 WL 2820401, at *5 (S.D. Tex. May
19  29, 2020) (granting release for defendant who had served 12 years of life sentence); *United States*
20  *v. Barber*, No. 18-0446, 2020 U.S. Dist. LEXIS 83457, at *13 (D. Or. May 12, 2020) (granting
21  release for defendant who had served less than one year of five-year sentence).

22  **IV.    CONCLUSION**

23  The motion is therefore **granted**.  The court modifies defendant's sentence of
24  incarceration to time served, followed by the term of supervised release previously imposed, with
25  the added special condition that for 6 months defendant be subject to home confinement,
26  defendant bearing the attendant cost of location monitoring.  *See United States v. Lee*, 445 F.
27  Supp. 3d 272, 274–75 (N.D. Cal. May 15, 2020) (imposing special condition of home
28

1   confinement).  The defendant's previously imposed standard and special conditions of supervised
2   release remain unchanged.
3         There being a verified residence and an appropriate release plan in place, this order
4   is stayed for up to fourteen days to allow for the making of appropriate travel arrangements and to
5   ensure the defendant's safe release.  The defendant shall be released as soon as appropriate travel
6   arrangements are made and it is safe for the defendant to travel.  There shall be no delay in
7   ensuring travel arrangements are made.  If more than fourteen days are needed to make
8   appropriate travel arrangements and ensure the defendant's safe release, then the parties shall
9   immediately notify the court and show cause why the stay should be extended.
10        The court orders Ms. Terraciano to self-isolate for fourteen days in her sister's
11  home once she arrives there.  The government's request that Ms. Terraciano quarantine within the
12  custody of the Bureau of Prisons is **denied**.  *See United States v. Scparta*, __ F. Supp. 3d __, No.
13  18-578, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020).
14        The requests to file under seal, *see* ECF Nos. 97 & 99, are **granted**.
15        IT IS SO ORDERED.
16  DATED:  October 2, 2020.

CHIEF UNITED STATES DISTRICT JUDGE